# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

Roger Kalaouz and Associates, a Lebanese )
Corporation, and RK & A, Inc., a subsidiary )
California corporation, )
32610 McRae Lane, )
Wildomar, California 92595. )
)
        Plaintiffs, )
) C.A. No.:
v. )
)
Jack Rouse Associates, Inc. )
600 Vine Street )
Suite 1700 )
Cincinatti, Ohio 45202 )
)
        Defendant. )
)

## COMPLAINT AND JURY DEMAND

### PARTIES

1. Roger Kalaouz and Associates is a Lebanese Corporation, with a subsidiary corporation, RK&A, Inc., a California entity, which has principal offices located at 32610 McRae Lane, Wildomar, California 92595.

2. Jack Rouse Associates, Inc. is an Ohio entity with a principal place of business located at 600 Vine Street, Suite 1700, Cincinnati, Ohio, 45202.

### JURISDICTION AND VENUE

3. The parties to this matter are subject to this court's jurisdiction pursuant to Title 28 U.S.C. §1332(a), diversity jurisdiction, as the parties to this matter are citizens of different states and the amount in controversy exceeds $75,000.

4. This court is the proper venue for this matter, as the contract(s) giving rise to this action was/were negotiated and/or executed by the parties in Washington D.C.

## FACTS

5. On April 18, 1997 Rouse Wyatt Associates, the predecessor to Jack Rouse Associates, Inc. (collectively "JRA"), and Roger Kalaouz and Associates ("RKA") entered into an agreement ("1997 Agreement") whereby JRA granted RKA the exclusive right to represent JRA in the procurement of contracts for design and construction of a marine theme park in Lebanon. The term of the 1997 Agreement began on October 1, 1996 and ran for five years. The 1997 Agreement memorialized a relationship that had begun in October of 1996. In the 1997 Agreement, JRA agreed to pay RKA a commission of six percent (6%) of the gross contract value price for each contract entered into by JRA.

6. On February 14, 2002, Jack Rouse Associates entered into an agreement with Roger Kalaouz and Associates ("2002 Agreement") whereby JRA granted RKA the exclusive right to represent JRA in the procurement of contracts for design and construction of a marine theme park in Lebanon.

7. The term of the 2002 Agreement began on February 1, 2002 and ran for five years. In the 2002 Agreement, JRA agreed to pay RKA a commission of six percent (6%) of the gross contract value price for each contract entered into by JRA.

8. JRA and RKA negotiated the terms of a proposed agreement, dated October 5, 2006 that would grant RKA the limited right to act as JRA's representative, "...for certain other projects within the Gulf States Region," indicating a broader geographic scope than the previous two agreements. The Gulf States Region was defined in the proposed agreement as including the

United Arab Emirates, Iran, Iraq, Kuwait, Bahrain, Oman, Qatar, Yemen, Saudi Arabia, Lebanon, Syria and Jordan.

9. This agreement was executed by JRA and the parties' conduct would indicate that JRA intended to be bound by the terms of the proposed agreement, expanding the geographic scope of RKA's representation of JRA. RKA did not execute the 2006 agreement due to unsatisfactory compensation terms.

10. Through the parties' course of conduct as the parties continued their business relationships, the geographic scope over which RKA was asked to represent JRA expanded, as seen through emails and discussions between the parties.

11. JRA has at times represented to third parties that RKA was its representative for matters outside of Lebanon, as well.

12. As RKA facilitated introductions and worked to procure contracts for JRA from 2002 prospectively, per the above-identified agreements and during the term of those agreements, a lack of transparency in these processes has prevented RKA from having access to JRA's internal operations for the purpose of determining when JRA has entered into contracts for which RKA would be owed compensation.

13. As RKA ultimately sought compensation for its efforts in procuring opportunities for JRA, the parties disagreed over what projects RKA was owed compensation for, resulting in a 2007 limited settlement agreement ("Settlement Agreement"), wherein RKA was compensated for two individual projects occurring outside of Lebanon, but within the Gulf States Region.

14. The Settlement Agreement, per its terms, only resolved disputes over two projects specifically named in the Settlement Agreement, stating "...RK&A does not waive any other rights it may have toward JRA for any other business that JRA may have conducted in the

UAE." Both parties agreed the Settlement Agreement did not constitute an admission of liability for either party with respect to issues of breach of contract.

15. This Settlement Agreement compensated RKA for having performed contract procurement services for JRA outside of the geographic scope outlined in the 1997 and 2002 Agreements.

16. In negotiating the Settlement Agreement, RKA relied upon specific representations made to it by JRA with respect to the compensation paid to JRA and the value of the projects which were covered by the Settlemnet Agreement. Those representations were intentionally false and significantly undervalued the projects in discussion and reduced the stated compensation received by JA in connection with such projects.

17. RKA has attempted to facilitate discussions regarding resolution of remaining projects for which RKA is owed compensation from JRA, but without success. By letter dated March 1, 2010, RKA sought to open a line of communication to resolve the dispute at issue in this proceeding, including a request for greater transparency in JRA's undertakings in the Gulf States region, as RKA is without access to the evidence of what contracts JRA has entered into in the Gulf States region.

18. RKA has received no response from JRA regarding the projects identified in the March 1, 2010 correspondence.

19. RKA is therefore left with no choice but to pursue legal action to resolve this dispute.

20. RKA has expended significant time and effort over more than a decade to procure contracts for JRA in the Gulf States region, though the use of its significant contacts, experience, and development efforts, and now seeks compensation for services rendered.

## COUNT I
### (Breach of Contract)

21. In 1997 and 2002 RKA and JRA entered into Agreements whereby JRA granted RKA the exclusive right to represent JRA in the procurement of contracts for design and construction of a marine theme park in Lebanon.

22. These Agreements for services were extended outside the geographic scope identified therein by discussions taking place between RKA and JRA.

23. JRA held out to the public that RKA represented JRA in efforts to procure contracts outside of the geographic scope set forth in the Agreements.

24. Upon information and belief, JRA subsequently entered into contracts to develop amusement parks throughout the Gulf States Region as a result of RKA's contacts and development efforts.

25. JRA has since denied RKA the 6% compensation set forth in the Agreements.

## COUNT II
### (Promissory Estoppel)

26. In 1997 and 2002 RKA and JRA entered into Agreements whereby JRA granted RKA the exclusive right to represent JRA in the procurement of contracts for design and construction of a marine theme park in Lebanon.

27. These Agreements were extended outside the geographic scope and the type of venue identified therein by discussions taking place between RKA and JRA.

28. JRA held out to the public that RKA represented JRA in efforts to procure contacts outside of the geographic scope and the type of venue set forth in the Agreements.

29. JRA has purposefully mislead RKA about JRA's involvement in the Gulf States Region as shown by the attached email evidence wherein JRA stated to RKA that they were focusing their development effort on China instead of Dubai, U.A.E.

30. RKA acted in reliance on JRA's statements and did not further investigate JRA's involvement in projects in the Gulf States Region.

31. Upon information and belief, JRA subsequently entered into contracts to develop amusement parks throughout the Gulf States Region as a result of RKA contacts and development efforts.

32. JRA has since denied RKA the 6% compensation agreed to in the Agreements.

## COUNT III
### (Fraudulent Inducement)

33. Upon information and belief, JRA received significantly more compensation for its services rendered in connection with the projects covered by the Settlement Agreement and its representations to RKA were fraudulent, intended to induce RKA to settle for less than the value otherwise due.

34. RKA agreed to accept the compensation set forth in the Settlement Agreement based solely upon its reliance of the representations made to it by JRA, and trusted JRA in good faith due to the length of the parties business relationship.

WHEREFORE, Plaintiff prays that:

(a) this Court grant judgment to Plaintiff upon Count 1 of this Complaint for breach of contract against Defendant, and award to Plaintiff compensatory damages in an amount to b determined at trial by the Trier of fact but no less than Ten Million ($10,000,000) Dollars;

(b) this Court grant judgment to Plaintiff upon Count 2 of this Complaint for Promissory Estoppels against Defendant, and award to Plaintiff compensatory damages in an amount to b determined at trial by the Trier of fact;

(c) this Court grant judgment to Plaintiff upon Count 3 of this Complaint for Fraudulent Inducement and award to Plaintiff compensatory and punitive damages in an amount to b determined at trial by the Trier of fact;

(d) Plaintiff be awarded the costs and disbursements of this action, together with reasonable attorney's fees;

(e) this Court grant Plaintiff such other and further relief as this Court may deem just and proper.

## JURY DEMAND

The Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

*[signature]*

Gregory L. Lattimer [371926]
1200 G Street, N.W.
Suite 800
Washington, D.C. 20005
Tel. (202) 638-0095

OF COUNSEL

Daniel P. Gibson, Esq.
Christopher P. Cifra, Esq.
Mark C. Preiss, Esq.
Gibson & Behman, P.C.
One Mountain Road
Burlington, MA 01803

Kendall A. Minter, Esq
Minter & Associates, LLC
5398 E. Mountain Street
Stone Mountain, GA 30083